My name is Claire Rauscher and I have represented Shannon Drake since July of 2016. The Hyde Amendment was enacted for criminal prosecutions just like this one. What happened during the prosecution of this case warrants a remand of this matter and assessment of attorney's fees. The trial judge used a legal determination that was incorrect as well as abused his discretion based on all the facts that occurred during the prosecution of this case. And the key here are the facts, the overall facts over the prosecution that occurred over a two-and-a-half year period of time. First, the government misled not only Ms. Drake, her lawyers, the grand jury, and the judge in this case about whether she was in fact a witness or whether she was a target or a subject. In fact, this misrepresentation was so egregious that the North Carolina State Bar has filed a complaint against the prosecutor in a very unusual action. During the grand jury, Ms. Drake was subpoenaed twice before the grand jury. Both times she was told by the government that she was merely a witness and not a target or a subject of the investigation. Counsel, didn't the district court make a finding on that very point that there was a, she was told that, but the district court said there's no intended misrepresentation here and no prejudice to Drake. But the district court, the Hyde Amendment terms, this speaks in terms of vexation and bad faith. And the district court made a finding here that there was no bad faith, that there was no intended misrepresentation. So we have a finding that seems right on point in terms of the standards of the Hyde Amendment. And I wonder how we overcome that. We overcome that, Your Honor, by looking at the entire and all the facts. And in fact, if you look at the record of what the judge actually said, quote, during the hearing, he said this was very troubling. He also said, in fact, in the footnote in his opinion, that he was unimpressed and was going to take it under advisement as to what he was going to do about it because he was misled by a filing by the government. Now, we don't know what, if anything, the judge did. But I would say to the court that when you look at the overall circumstances and what the judge said at the time, it's clear that there were problems. But the bad faith part of this has to do with the overall facts. And I'll go over that, Your Honor, shortly about all the different things that happened that shows the bad faith of the government. So as I said, there are numerous factors. And here is one of them, is the misleading of the jury, grand jury, Ms. Drake, her lawyers, as well as the court. The next factor that's important is during the case throughout the that there was a witness before the grand jury, CG, that was clearly the person who was important and was essentially going to make out this case. And the judge, they told the judge in pretrial, they told the judge it was this person was a witness on the witness list. In fact, they even said during their trial brief that this person was going to be called. Well, if the judge, counsel, if the judge felt as badly misinformed and misled, as you suggest, it was open to him to award attorney's fees. But he declined to do that. And he made findings indicating why he declined to do it. How do we look behind those? Well, Your Honor, essentially, he made a an incorrect legal determination. He was using the untested testimony of a grand jury witness to justify the fact as to denying this petition. And if you look at the evidence that CG testified in front of the grand jury, there was absolutely not only did she not testify, there was absolutely no corroboration as to what the judge was relying upon during this. I mean, there was no opportunity to cross-examine. He was a grand jury. But the judge made that legal determination to to warrant and give credit to that testimony. And that's where the problem is. That's where the judge made the wrong legal determination by relying on that. In his opinion. Would you continue, you're about to say about what was said about CG. And so we have to, we give a lot of, as you know, the standard is tough in terms of deference to the district court. But we do look at facts to see whether or not it's inconsistent. So what are you saying that the government said about CG in respect to being the the key witness or grand jury? What do they represent to the court? Well, they represented to the court that when when in their many pretrial motions in this case, and they represented the court, the importance of her and her testimony. And but they never called her. And here's here's the interesting part is the lack of corroboration of what she said. Right? They didn't call her, but they could have brought in other evidence. One of the things she said was that Shannon Drake was told to shred documents by the co testified that Drake told her that that she asked CG to shred documents as well as well as another employee. These were proffers by the government, what she had said and would say, correct? Right. All right. What she said at the grand jury, how do we know that the court was led by those proffers, a witness who never testified and in fact, didn't go to the grand jury? How do we know that the judge was persuaded or sufficiently or significantly influenced by that in terms of denying your motion for? How do we know that? He said that throughout his 33 page opinion, right? Over and over again. He said that he credited that testimony. Well, not credited that testimony. He granted your rule 29 motion. But the question isn't whether the whether your client was guilty or not guilty, whether the government should win or not win. The question is whether the government's was the three words that the height amendment uses and the district court said they had this witness and this witness testified before the grand jury and that is relevant to whether the government's entire prosecution meets the high standard under the height amendment. What's wrong with that? What's wrong with that is the government has a duty to conduct an investigation. You know, your honor, if if you're allowed to put witnesses in And as we know, the case law, Clara, Claro and Isaiah says you can't rely solely on an indictment for the probable cause, right? Totally. Can I ask you that? No, go ahead, please. I just had one question. You say repeatedly in your brief something you just said, and I just wanted to ask you about that. You say that you can't rely solely on the fact of an indictment to show that it substantially justified. 1000% agree with that. The part is, I don't read the district court is having said that. And so could you just identify where you think because you asserted over and over again in your brief, where do you think the district court said? I am relying solely on the fact of an indictment and denying face in his opinion, the judge says several times that the testimony I'm just looking for the best one. I just I just told you I am skeptical that the court ever said that. So what is where you think the district court most clearly says? I am relying solely on the fact of an indictment to deny face. He doesn't specifically say the indictment. He specifically says the testimony of C. G. And that only occurred in front of the grand jury. So he is relying on that. That's really just a follow up on what my friend Judge Highton said. If he's relying purely on the grand jury or whatever, um, why did you? How were you able to get a rule 29 dismissal? Um, because in order to grant a rule 29 dismissal, the district court would have had to look at all of the evidence, um, in the case. To me, I think you were lucky to get this rule 29 dismissal. District court said it was a close case and a lot of it. Um, uh, a good case could be made that Drake was an employee at Grand South who facilitated the scheme. Um, Harrison scheme to defraud the I. R. S. You were really lucky to get a rule 29 dismissal. And now you want on top of that to get attorney's fees and to overcome the district court's view, which, um, I agree with Judge Highton's. I didn't think I thought the district court looked at this case as a whole in its totality in the round. Um, and not just at the indictment, but you were lucky. You should have taken solace in your good fortune and proceeded home. Well, Your Honor, we certainly were pleased when the judge did that. I'm not gonna deny that. However, when you look at and I've said this over and over again, you have to look at the case as a whole. The key here is and there was no Drake's role at the bank was and that she was assigned these accounts by Doug courier that she administered the counts that she did all of that. There was no denying that. Well, there was. And as the district judge says in arguing that you're viewing the issue too narrowly, the district judge also says there's no dispute about two other things. There's some real bad stuff going on that is unquestionably illegal and that your client handled some of the bad materials. And so, as I understand what the district court says, literally, the only question is, did she know what she was doing or not? Because there's no, I guess another way to say it is, I think the district court said there's very little question that your client committed the actress Reyes of the offense. The only question is whether she had the men's right. Is that right? And it's very clear that there are other people who have the men's right. Not saying your client of the men's right, but there were other people who had the men's right. That's correct. And so I guess what would you? I guess. Could you respond? One of the district court said about your argument that I found sort of persuasive is to say it's sort of artificially bifurcating the issue down to the only actually disputed question and just pretending that the rest of it doesn't matter. The district court said, you know, when we're assessing whether the government's case is substantially justified, we have to also include there clearly was bad stuff going on in the bank and your client very clearly was handling some of the bad documents. Oh, and third, she was very clearly working with someone who had also committed a crime, and we can't pretend that none of that exists for purposes of whether the government's case was substantially justified. I guess I'll say I share with Judge Wilkinson that I my reaction was that your client was fairly fortunate to get a rule 29 dismissal in this case. So what? What is your best response to that response to this is is that there is no evidence that not only Miss Drake, but anyone else at the on the accounts knew that there was anything wrong with these accounts. There is absolutely no evidence throughout the trial. They brought in employees and they would wasn't part of the problem there that the district court suppressed some of the witnesses that they wanted to call, right? There were people who were going to testify. This was some really weird out of the ordinary stuff, which could give rise to an inference that your client knew what she was doing was wrong with the district court suppress that. But I mean, at least the First Circuit and the not cases said in assessing whether the government's case was substantially justified, we can consider evidence that was suppressed by the district court. So why in making that whole determination? I mean, the district court, the district was very candid in a number of respects. The court even said I might have gotten some evidentiary rulings wrong, right? And so what do I do with that? Well, my response to that would be, I think that some of that wasn't it was inadmissible. Um, I understand you think that in the government thought the opposite and the district court agreed with you. I have to deal with the record as it stands. And the judge may say, Oh, gee, maybe I should have let that in. But the judge didn't let that in. And we're looking at the record as it stands. No, but not says not says I mean, I guess are you telling me that you disagree with not or so not says you consider suppressed evidence in deciding the height amendment question. Do you disagree with that? Well, it depends on what the suppressed evidence is. Well, the testimony that some people would have said this was extremely weird stuff deeply out of the ordinary, which could have allowed a reasonable jury to conclude that your client knew that what she was doing was wrong. My understanding is the testimony would have been that these were different, that the forms were different and that things were handled in a different way. But there was not going to be any testimony that it was that these people thought it was wrong or that the judge wouldn't let us use the word illegal. Um, but inaccurate. Um, they that did come out that no one said that it was inaccurate. Um, it's a small bank. Um, there was evidence. There's no training. Um, everybody did their job. And that's what happened here. I mean, everybody did their job. Shannon Drake did what she was told to did. And there's no evidence, especially the individual who worked on those accounts with her before you sit down. I have a question about discovery. Um, are you aware of other than that 1997 case right after the height amendment was enacted? Are you aware? I didn't see sight in the briefs. Any case where a district court has actually awarded discovery on item ammunition in the Gardner case? Is that the 1998 Oklahoma decision? That is correct. Um, that is the only one. You know, and it's unusual. The statute says you could have ex parte in camera, but it's never been awarded. I mean, as certainly has been said over and over again. Um, there is a large obstacle, uh, to overcome many of the case law and various things have happened in this case. But I'd submit to the court. So I just want to say that, um, uh, if you represented the M. S. Drake trial, you did a very good job and we were talking about it. You were talking about it being a small bank and everything. And I wonder my my on hearing that as well. When you got a small business or a small bank, um, people know what's going on. They know what's going on within that bank. And the relationship between Harrison and and Drake was, um, sufficiently collaborative that it's hard to believe that she didn't have some inkling of what was was happening. But all I can say is, if you were counsel at trial, you did a very, very good job looking at the whole facts of this case and, um, getting that, uh, ruled ruled 29 dismissal. That was a really close, near thing, and you want it. And that's much in my view. That is much to your credit. I appreciate that. Thank you, Your Honor. My time's up. Thank you. Listen now. Thank you. May it please the court. Greg Knapp for the government. The court will not be surprised to learn that I take no issue with the observations made today from the bench that Mr Drake was perhaps lucky in getting the rule 29 motion for a judgment of acquittal. But of course, that's not the issue that the court needs to decide whether or not the court district court actually got the rule 29 motion correct. I think there are several observations, several findings that the district court made in the course of granting the rule 29 motion that defy any conclusion that this prosecution was vexatious or in bad faith. Can I ask just a threshold question that I didn't see? What is the status of the bar discipline complaint? It's pending. What does that mean? I don't know. It's a state. I looked at the complaint. There's an answer filed. It stayed beyond that. I don't know. And as for those findings by the district court, one was that although, yes, I am granting the rule 29 motion, I find this to be a close case. And if it's a close case, in other words, if the government's evidence at trial was almost enough to prove guilt beyond a reasonable doubt, even as to intent, then it can't be said that the prosecution was groundless. It can't be said that the prosecution was so vexatious and lacking probable cause. It would have been brought in bad faith though, right? The analogy I keep going to here is rule 11, right? So rule 11 similarly says you can't bring things that are meritless, right? And you can't bring things that are objectively unreasonable. But rule 11 also says you can't bring things in bad faith, which to me suggests that there can be something that's not frivolous, but still in bad faith. So the fact that it's a close case doesn't mean it wasn't in bad faith. So what do you say about that? Absolutely. And then jumping to one of the other findings by the district court at the rule of 29 motion, the district court went out of its way to commend the government for its handling of its evidence and for its candor and professionalism in presenting its case. Now, if the district court really felt that it was misled, as was suggested by my colleague today, that would be a very strange finding to make. And on that point, I would like to dispute that claim. I mean, there is no statement by the district court that it felt misled by the government's presentation of this case. What about the star witness, C. G., that you had hoisted quite a bit? I would simply respond that there's been no showing that the government acted improperly or in bad faith in the handling of that witness. The government intended to call her, but then based on developments shortly before or during trial, the government decided not to. And we can infer from the record that the reason was related to potential credibility attacks. And that's and that the and that the district court would not give you a ruling on the scope of cross examination question. Was that part of that? You made a motion to limit the cross examination that the district court had not ruled on. That's part of it. Yes. Um, the record does not fully disclose the reason why the government chose not to call C. G. But it's on, but it's on the record that you'd filed a motion to limit the cross and that it's on the record. And so, you know, to an earlier point, um, it was observed that regarding evidence that's excluded. If there's a good faith argument that the government has for admitting that evidence that's properly considered as part of the height of an analysis, and the district court made an observation during its full 20 emotion. That also is instructive with respect to the treatment of C. G. Because in this motion that the government filed in lemonade regarding the scope of the cross examination, the government cited cases from this circuit holding that these collateral issues that were expected to arise regarding an apparent violation of the bank's sexual misconduct policy could be properly limited. And so the government had a good faith basis for moving forward with its witness, but limiting appropriately limiting the inquiry of cross examination on these side matters. Now, as your honor has observed, that was not fully resolved. But the point is, it's a good faith argument. It's the government had a good faith basis for proceeding forward. And if there's a good faith argument, there cannot be recovery under the height of it. I mean, the height of it only reaches cases in which bad faith so permeates the prosecution that it can be found that the government's purpose in bringing the case was improper. And there's no remote suggestion of that here. You take C. G. Out. What was the real best evidence as to men's rare excluding C. G. Just for purposes of argument. Sure. We have the fact that Miss Drake was the account executive assigned to handle the nominee accounts. That's her job. It is. Okay. Okay. That's well, it's that's her job. You can't wait for you. Boy, I'm gonna cut you off. But go ahead. But if you're citing things, it's her job. You can't remove yourself from your job. So I'm talking about. Okay, go ahead. Go ahead. Maybe just the job is it. Go ahead. She was. Go ahead. Go ahead. I'll agree with you. In part, it's the job of account executives to make these types of entries. It's not the job of an account executive to use nominees to conceal the actual beneficiaries interest in this nominee accounts. And so there's moving to the other evidence. We have the fact that drape was working with courier, the convicted felon in this case, one of the architects of the nominee lending scheme. We have the fact that Shannon Drake also not worked only internally with courier, but also worked externally with Harrison's company. And she communicated directly with Harrison's employees regarding which nominees Harrison wanted to use to cover his interest in these nominee accounts to cover various invoices, cover various factory advances that benefited him. So this is not a case where Miss Drake is just duped by courier. It's just she is involved in the process of determining which nominees will be used to conceal his interest. Um, other evidence, the fact that she then consistent with those communications with Harrison's company made what the district court found to be materially false entries in the books and records. Now all of that, and that's before even getting to CG consistent with your question. And so all that evidence at a minimum, it shows that she has to And it also gives the government a good faith basis at a minimum for arguing the next inferential step that she also knows that by using these nominees, she is facilitating Harrison and getting around the bank's lending limit that's applicable to a singular borrower and thereby facilitating his bank fraud. And could you now add just leave? I want to keep still leave CG out of it. But these witnesses that you wanted, there was some discussion about what exactly these witnesses that the district court suppressed would have said. What would that have been? Uh, one witness, um, worked for Harrison's company would have testified as to the unusual nature of the factoring arrangement that Harrison had with Grand South Bank as opposed to other factoring relationships in their experience. I'm blanking on that name. It was either Kathy Miller, Angela Holland, I forget which one, but an employee of Harrison's company. Um, then also bank employees. Um, errors and, uh, one other. I don't need the names. What is your understanding is what they would have said. They would have testified also that the wire forms that were used to advance funds and Harrison accounts were atypical. They were unusual and that it was unusual to use to have so many names assigned to a single account during trial. The government proffered some evidence that this report excluded it. We moved on. If there are no other questions, I will be glad to see the rest of my time. All right. Thank you. Listen, that couple things to respond to here. When the court was talking about the men's Raya and some of the other evidence that came out, there was no evidence at all that Shannon Drake knew anything about lending limits. There was no evidence at all that she had any access to any of the actual loan agreements that were signed between Harrison and the nominees. There was evidence in the case that everyone in the bank knew that Greg Harrison owned the nominee companies. So the fact that money was going to Harrison was not a surprise. In fact, the wire room had that forum that Mr. Knapp talked about and they said that, yeah, it was an unusual forum regarding others, but they had no reason to believe otherwise that sending the money to these various places was a problem. The key here is everyone understood and knew, didn't think that there was anything wrong with what they were being told to do. Did he in his testimony ever say anything that he told her to shred documents, that he let her know that this was improper? Was there anything that he testified at that? No. All he said was that she was involved and she was the account manager and took over the accounts and did all that work and that she was a hard worker and diligent. Absolutely no evidence that he did anything or testified to anything that she knew what she was doing was wrong or had the criminal intent. And I think that is very significant here. When you have got a co-defendant who pled guilty and said that he was a co-conspirator, he never testified anything about Sharon and Drake and he was her supervisor. He was the one who told her what to do. And the that's an important key element here. Every case I tried, the co-defendants come in and they testify about what the other people and all the other co-defendants did. The government charged two different conspiracies here and they involved Doug Currier and that did not happen. We certainly understand it's a high burden but the facts in this case warrant this case to be remanded back to the district court for them to really take a look at all of the various evidence here. I also have to say that the judge did in its April 18th opinion when it was talking about what happened with the misstatements and being misled said on page 67 which would have been, it's page 878 in the joint appendix, the court is very concerned about what occurred in this case. Namely, with the prosecutor's comments, Major Drake, defense counsel, the grand jury and this court. And the judge had already said earlier that they were misled. So I submit that yes, the judge admitted he was misled and then we have the footnote there saying that he's going to take further action. He's under advisement. So when you look at all the facts of this case, it warrants consideration of remand back to the district court to look closely at all the various factors and that the fact that he relied so heavily on the testimony of a grand jury witness that was totally untested should certainly be commented and appreciated. Thank you very much, counsel. Thank you so much. I appreciate it and we wish you well. Thank you so much for your arguments here today. We'll ask the clerk to adjourn the court. This honorable court stands adjourned.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Toby J. Heytens